3-17-0443 The People of the State of Illinois have the lead by Justin Nicolosi v. Ernest Leroy King Jr., Talent by Autumn Donnelly 3-17-0043 So, going back to the first argument, now the evidence here, not only was it insufficient, but it was closely balanced. Now those are two separate considerations. So even if this court does find that the evidence was sufficient to convict Ernest, this court can still find that it was closely balanced. Because the evidence, you know, to quote People v. Sebi, a case that was cited in an opening brief, the evaluation is not the sufficiency of the evidence in a plain error claim, it's the closeness of sufficient evidence. But that being said, I'd like to discuss just briefly our first issue that the state did not prove that Ernest was actually the offender. Going back over the testimony again, Ashley's testimony is obviously, as we discussed, our position of the suspect. Because she was offered a very generous deal that she took in exchange for her testimony. She was facing a Class X sentence of 21 years because a firearm was involved, and got a Class II sentence of four years. It is a huge difference. And she acknowledged that when the officers approached her car, she was in a lot of trouble. She knew she was in a lot of trouble, which may have accounted for why she lied. And to get out of that trouble, could she have implicated Ernest? There's no question that Israel did it, because his identification was even found in her car. The two brothers recognized Israel from a prior incident where he came into the store wearing a sea mask and threatened to rob it. So, you know, they had their eye on him for a while. But the question is whether Ernest was the second person. Now, the officers did say, Ashley said that she admitted that it was Ernest who was involved, only after the officers said, we know who did it. So her testimony has to be thrown out entirely. Then again, discussing the two eyewitness identifications. Now, neither brother had any motive, you know, like Ashley did, to implicate Ernest falsely. They just couldn't necessarily see. Now, there could be the possibility that they, knowing Israel, had seen Israel several times, come into the store, and then some of those times he was with Ernest. Could it be that they associated Israel with Ernest, and therefore the second offender became Ernest in their mind? We don't know, and it's not Miss Horst's job to speculate. All we know is that the evidence was just not sufficient to convict Ernest. And for that reason, Ernest's conviction should be reversed outright. But even if this court, again, finds that the evidence was sufficient to convict Ernest, this court should still give him a new trial, because the evidence was so closely balanced. Now, it is true that, you know, the defense did not present evidence. But had, you know, what evidence was there to present, had Ernest testified, this wouldn't be an issue. You know, the state's failure, I mean, the court's failure to inquire about the fourth principle under 431B would not be an issue. There really wasn't anything else to advance, except the theory the defense counsel did, which was misidentification and Ashley's unreliability. That being said, the evidence against Ernest was just not overwhelming, and the court's error cannot be dismissed as harmless. As such, Ernest is entitled to a new trial at the very least. But barring either result, this court should remand for a new sentencing hearing under the third argument, that Ernest received an excessive sentence. And to that end, we rely on our arguments we set forth in our brief. And he had two prior… Aggravated robberies. Two robberies. Yes. But at the same time, the court… In addition to some other things. The court seemed… The court was preoccupied with using that sentence, the very excessive sentence that Ernest got, to deter others. And using Ernest… Deterrence is a factor. It's certainly a delineated statutory factor to be accounted for. But at the same time, making an example of Ernest is not… By imposing such a sentence, it's not proper. And he should get a new sentencing hearing where all the factors are given equal weight. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. May it please the court, counsel, Your Honors, that the state submits that any rational trier of fact could have convicted the defendant of armed robbery in this case. It is true, of course, that Ashley Collins received a deal with the prosecution in exchange for her testimony in this case. But, of course, that doesn't mean that her testimony is unworthy of belief. As counsel said, I think she implored this court not to consider her testimony at all. I think that's obviously quite a stretch because the fact is her testimony was very credible. And if you consider Collins' testimony with the testimonies of Mohammed Samhan and Samhan, they create a complete and coherent timeline of events. And basically, their testimonies corroborate each other. Collins testified that… Well, it doesn't corroborate the identification. Not the identification, no, but it paints a picture of what happened before, during, and after. They're not sure who it was. Who wasn't sure, Your Honor? Did the jury see the video? Did the jury see the video, the outside video? I believe so. I believe they saw all the videos, yes. Couldn't they have looked at the video and compared the physical attributes of the person and found it was consistent with the defendant's appearance? Of course they could, Your Honor. But if it was a 300-pound man wearing a gorilla suit, it obviously didn't match. Sure. Since the jury saw those videos, weren't they entitled to decide whether the identification was strong or weak? Of course they were, Your Honor. They were able to decide all of the facts in this case. They were able to listen to the witnesses, view the videos, consider the identifications made by the brothers. And they obviously believe that the State met their burden. Proof in this case, the State submits that their decision was correct and that any rational trackback would have come to the same conclusion. Both Muhammad and Samhan, the brothers, they both identified the defendant as the second gunman, both in a photo lineup and in court. And Samhan even had a better view than just during the robbery. He, of course, followed Israel Payton and the defendant in Ashley Collins' vehicle. He followed to the Harrison homes, and he saw both men, including the defendant, exit the vehicle and flee. He said he had a clear view his car was facing the defendant as he left. The defendant didn't have the hoodie on anymore. He saw his face. Clearly these men had plenty of ability to identify the defendant. And Ashley Collins, again, yeah. That's a pretty gutsy thing to do. Oh, boy, yeah. To grab your gun and to go after two gunmen, that takes some guts. I don't know if I have, but he felt he needed to do that. And he was able to get another look at these men. And while they knew Payton, they didn't need another look at Payton to know that that was him. But he was able to get, by following, he was able to get another look at the defendant. And I'm sure that the jury considered that as a strong piece of evidence that supports his identification. So not only did the state submit that the evidence was sufficient to convict in this case, but considering the 431B issue, the strength of this evidence is considerable. And the state would submit that this was not closely balanced. Again, you had two very positive identifications in this case. And you had Ashley Collins who testified that she took the defendant and Israel Payton to Laramie Liquors. They had their guns already. They were in the liquor store for a while. They came out to gunfire. She started driving them away. She testified that Israel Payton and the defendant got back in the car. She took them to Harrison Homes. And from there, she parked. They left their guns. Payton left his ID. They left their hoodies. The hat that the defendant was wearing in the video was left in there. They flee. And Samhan sees the defendant again. So this all ties together in a very complete and coherent manner. The jury heard that. And there's just really no ñ this is a pretty airtight timeline. And for that reason, the state submits that there's a significant amount of direct and circumstantial evidence pointing to the defendant committing this crime. Therefore, this was a very strong case against the defendant and not closely balanced. Therefore, this does not rise to plain error and the issue should be considered forfeited. If there are any questions on those issues or issues three and four, I'd be happy to answer them. But that's all I have. Thank you. Counsel. Yes, Your Honors. Opposing counsel mentioned the photo array. And so the brothers identified Ernest from the photo array. And so I'd like to just talk a little bit about the circumstances of that and why that is suspect. You know, we don't know exactly how the photo array was given to the brothers. We don't know under what circumstances it was given to them. We do know that they identified a photo of Ernest. What we do know is the detective who arranged the photo array discussed a little bit about how the photo array was produced and in that testified that Ernest's last booking photo was entered into a computer program that generated the photos of five other gentlemen. Now, Ernest was on MSR for the aggravated robberies at the time that this offense took place. And so it appears that his last booking photo, one of those crimes occurred when he was either 18 or 19 or his booking photo was taken around that time, 18 or 19. He was 25 when this robbery occurred. In the appendix to the defendant's opening brief, there are two photographs. One is of Ernest, one from the photo array and one from his IDOC profile. It was taken from the website at the same time the brief was filed. And you can see a very big difference between those two photos. So it's interesting. If we knew the circumstances under which that photo array was given, what the officers may have said to the brothers or so forth, that would be a little more illuminating how they could see a photograph of Ernest at 18 and be able to pick that out as the person who committed the crime when Ernest was then 25. So that's another aspect that the state relies on here to say that this case against Ernest was airtight when it actually even raises more questions and raises a reasonable doubt. Opposing counsel also discussed how Ashley's testimony was corroborated by the identifications of the brothers and vice versa, but it's very important to know, to remember when Ashley's identification of Ernest came. Now Ashley's identification of Ernest as the second offender came only after the officers told her, they are you who did it. Now did the officers tell her, you know, I know it was Ernest in Israel. You know, we don't know, but we do know that she at first disavowed any knowledge of who committed the crime. And only after the officers said, we already know, how about you just corroborate what we're going to tell you, basically is when she acknowledged that it was, or she implicated Ernest in the offense. So those are just two points that we wanted to go over, but otherwise, again, for the reasons that we stated in our briefs and before the court today, this court should outright reverse Ernest's conviction, or in the alternative, grant him a new trial. And again, lastly, if those two arguments fail, at least, at the very least, a new sentencing hearing. I have one quick question for you. I know you think the photo of Greg would have been suspicious, the photograph doesn't really match the client, the way he looked at the time of the trial, but there was no motion to suppress the identification, was there? No. So that photo of Greg, we can't presume it's suggestive. Oh, not at all. In my argument, I'm sorry if I made it sound like it was suggestive. I just think that it creates a reasonable doubt with those pictures being so different, with Ernest, what I assume what he looked like in court. Did the jury get to see those pictures? The jury got to see the photo array pictures and then was able to see Ernest in court. Okay. So they made that determination. They did, but Are you asking us to review that same evidence? Yes. Okay. Okay. I appreciate your answer. Thank you. Thank you. Thank you, counsel. This court will take this matter under advisement. We'll take a break for panel change. We will attend your decision in the future. Thank you both for your arguments.